IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN BENEDICT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF MALVERN, et al. | : | NO. 15-6462 |

MEMORANDUM

Dalzell, J.                                                                                                          May 31, 2016

**I.      Introduction**

We consider here the defendants' motions to dismiss the second amended complaint. Plaintiff Kathleen Benedict has sued the Borough of Malvern (the "Borough"), the Malvern Fire Company, and Michael Bernard McMahon, Jr. for an incident that occurred on December 10, 2013 that left her permanently and severely injured. We have jurisdiction over Benedict's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

For the reasons explained below, we will dismiss with prejudice Count II against the Borough and the Malvern Fire Company, but we will deny McMahon's motion to dismiss Counts I and III against him.

**II.    Standard of Review**

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the second amended complaint.

### III.   Factual Background

On December 10, 2013, at approximately 3:38 P.M., defendant Malvern Fire Company dispatched an ambulance to 5 Birch Road in Malvern, Pennsylvania, in response to a diabetic-

type emergency. Second Am. Compl. ¶ 12. Defendant McMahon, a licensed paramedic, entered the home along with two Emergency Medical Technicians ("EMTs") from East Whiteland Ambulance. Id. at ¶¶ 9, 13. McMahon and the two EMTs approached Benedict in the kitchen, and it was immediately apparent to them that she was suffering from hypoglycemia and acting erratically. Id. at ¶ 14. McMahon and the EMTs were familiar with Benedict, as they had treated her many times before. Id. at ¶ 15. Their goal was to restore Benedict's normal blood sugar level by having her consume glucose-fortified food and drink. Id. at ¶ 16. McMahon and the EMTs surrounded her to try to provide medical care. Id. at ¶ 17.

    McMahon approached Benedict and physically restrained her as she tried to leave the house. Id. at ¶ 18. Benedict stated that she needed to leave to participate in a cooking contest, but McMahon and the EMTs attributed this statement to her hypoglycemia, as there was no such contest underway. Id. at ¶¶ 18-19. In an effort to restrain Benedict, McMahon grabbed her by the shirt with his right hand and struck her across the head with his left elbow, knocking her to the floor. Id. at ¶ 20. Benedict collapsed and was rushed to Paoli Hospital, where she arrived in an unresponsive state. Id. at ¶¶ 30-31. She was diagnosed with a significant subdural hematoma and bleeding in the brain, requiring her to undergo an emergency decompressive craniotomy. Id. at ¶ 31. Her treating physician concluded that her brain injury was consistent with receiving a recent blow to the head and that her odds of meaningful survival were low. Id. at ¶ 32. Benedict sustained permanent and significant neurologic impairment and other debilitating injuries, including, but not limited to, right-side paralysis, significant cognitive impairment, memory less, scarring, neuro-motor impairment, and brain injury. Id. at ¶ 33. Because of her severe and permanent injuries, she is now confined to the Chester Valley Rehabilitation and Nursing Home. Id. at ¶ 4.

After McMahon knocked Benedict to the floor, he did not render any medical care to her or transport her to the hospital. Id. at ¶ 29. McMahon left the house and approached East Whiteland medical technician Quintin Lotz to tell him that he had used excessive force when rendering aid to Benedict. Id. at ¶ 27. Lotz, an eyewitness, later stated that McMahon used much more force than necessary to restrain Benedict. Id. at ¶ 28. McMahon later described himself as "knocking [Benedict] for a loop" and called her an "asshole." Id. at ¶ 26.

The Malvern Fire Company is a fire department and emergency medical services provider responsible for the Borough of Malvern and Easttown Township. Id. at ¶ 7. Defendant Borough of Malvern is a borough in the Commonwealth of Pennsylvania. Id. at ¶ 5. Benedict alleges that the Borough and the Malvern Fire Company knew that McMahon had issues controlling his anger and that he was widely known by his nickname "McAngry." Id. at ¶¶ 36-37. Benedict avers that McMahon's supervisor, Deputy Emergency Services Chief Richard Constantine, knew that McMahon had issues controlling his anger and with the proper use of force while he was performing as a paramedic because of statements other people made both before and after the Malvern Fire Company hired McMahon. Id. at ¶¶ 54-55.

**IV.   Discussion**

In Count I, Benedict brings a claim against McMahon under 42 U.S.C. § 1983 for violations of the Substantive Due Process Clause of the Fourteenth Amendment and the Pennsylvania Civil Rights Act, 42 Pa. C.S. § 8309. Second Am. Compl. ¶¶ 42-49. In Count II, Benedict asserts a Section 1983 claim against the Borough and the Malvern Fire Company under a theory of supervisory liability. Id. at ¶¶ 51-62. In Count III, Benedict makes a supplemental

state law claim against McMahon for negligence, gross negligence, and assault and battery.[1] The three defendants filed separate motions to dismiss.

### A. McMahon's Motion to Dismiss Counts I and III

McMahon argues that the second amended complaint fails to state a plausible Section 1983 claim against him since it alleges only tortious conduct and that he did not act under color of state law because he did not abuse his power as a government official or employ his status as an instrument of oppression when he struck Benedict. McMahon Mot. to Dismiss ("MTD") at 11-12. He also argues that he is entitled to qualified immunity. Id. at 13-15. Benedict responds that her second amended complaint avers that McMahon was acting within the purview of his job as a paramedic when he struck her and his actions are fairly attributable to the state. Pl.'s Resp. to McMahon MTD at 8-9.

A cause of action under Section 1983 requires only two allegations: some person has deprived the plaintiff of a federal right, and that person acted under color of state or territorial law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005). Benedict alleges that McMahon, acting under color of state law in his capacity as a paramedic, violated her substantive due process rights under the Fourteenth Amendment when he struck her in his attempt to restrain her while he was trying to provide emergency medical assistance to her. Second Am. Compl. ¶¶ 43-46.

When a plaintiff brings a Section 1983 claim alleging a substantive due process violation against a paramedic, the threshold level of intent required to establish culpability for the constitutional violation is whether the paramedic acted with conscious disregard of a great risk

---

[1] Benedict acknowledges that it was not her intent to state a claim against the Malvern Fire Company under state law. Pl.'s Resp. to Malvern Fire Company MTD at 18. She also withdraws her claims for punitive damages against both the Malvern Fire Company and the Borough. Id. See also Pl.'s Resp. to Borough MTD at 18.

5

that serious harm would result from the challenged conduct. See Ziccardi v. City of Phila., 288 F.3d 57, 66 (3d Cir. 2002).

We find that the second amended complaint contains sufficient factual averments, accepted as true, to state a plausible claim for relief against McMahon under Section 1983. Benedict alleges that McMahon knew she was acting erratically because of her hypoglycemia but elected to restrain her by striking her across the temple with his elbow. In light of McMahon's training as a paramedic, and common sense, these factual allegations are sufficient to demonstrate that McMahon consciously disregarded a great risk that Benedict could be seriously harmed by being hit in the head and knocked to the floor. Further, plaintiff's allegation that McMahon was present in the kitchen because he had been summoned to an emergency medical situation in his capacity as a paramedic employed by the Malvern Fire Company suffices to demonstrate, at this procedural juncture, that McMahon was acting under color of state law. See, e.g., Mark v. Borough of Hatboro, 51 F.3d 1137, 1145 (3d Cir. 1995) (concluding that in Pennsylvania the provision of fire protection is a governmental function).

McMahon also argues that he is entitled to qualified immunity. A defendant asserting qualified immunity bears the burden of demonstrating his entitlement to that affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014). Qualified immunity shields government officials from liability for civil damages to the extent that their conduct did not violate clearly-established constitutional rights of which a reasonable official would have known. Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal alterations omitted)). Courts examining qualified immunity at the pleadings stage usually conclude it unwise because in most cases it is necessary to develop the factual record first. Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (non-precedential); see

also, e.g., Mitchell v. Township of Willingboro, 913 F. Supp. 2d 62, 67 (D.N.J. 2012) (quoting Newland for this proposition and rejecting a qualified immunity defense at the Rule 12(b)(6) stage). But see Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (stressing the importance of resolving immunity questions at the earliest possible stage in litigation). In this case, where the factual record is insufficiently developed, a qualified immunity analysis would be premature. We will therefore decline to address McMahon's qualified immunity arguments here, but will allow him to raise them again at a later date.

Since we are denying McMahon's motion to dismiss Count I of the second amended complaint, we will also deny his motion as to the supplemental state law claims in Count III.

### B. Malvern Fire Company's Motion to Dismiss Count II

The Malvern Fire Company moves to dismiss Count II of the second amended complaint because there is (1) no underlying constitutional violation and (2) no plausible claim for policymaker liability under Monell. Malvern Fire Company MTD at 5, 8. Benedict responds that the second amended complaint contains sufficient factual averments to demonstrate that McMahon's conduct shocks the conscience and that the Malvern Fire Company failed to train or supervise McMahon even though it knew about his anger issues. Pl.'s Resp. to Malvern Fire Company MTD at 9, 13.

As we explained above, the second amended complaint's factual allegations suffice to show McMahon's constitutional violation, but we will consider the Malvern Fire Company's arguments that the second amended complaint fails to state a Monell claim.

A municipality is not liable for its employees' constitutional torts under a theory of respondeat superior -- that is, a municipality cannot be held liable for its employees' torts solely by virtue of their employment relationship. Monell v. Department of Soc. Servs., 436 U.S. 658,

7

691 (1978). A municipality is liable for its employees' violations of Section 1983 only where a policy or custom representing official policy inflicts the injury. Id. at 694. To be liable under Section 1983, the municipality must act with deliberate indifference to the purported constitutional deprivation. Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007). As a result, a failure to train may constitute a policy or custom giving rise to Section 1983 liability only if such failure demonstrates deliberate indifference to residents' constitutional rights. See City of Canton v. Harris, 489 U.S. 378, 389 (1989). There must also be a direct causal link between the policy or custom and the alleged constitutional deprivation to ground liability. Jiminez, 503 F.3d at 249.

Benedict alleges that the Malvern Fire Company knew that McMahon had issues controlling his anger and that he was widely known by his nickname, "McAngry." Id. at ¶¶ 36-37. Benedict avers that McMahon's supervisor, Chief Constantine, knew that McMahon had issues controlling his anger and the proper use of force while performing as a paramedic because of statements other people made both before and after the Malvern Fire Company hired him. Id. at ¶¶ 54-55.

We previously held that McMahon's nickname alone could not support a Monell claim against his employer. Benedict v. Borough of Malvern, 2016 WL 1320790, *3 (E.D. Pa. Apr. 5, 1016) (Dalzell, J.) (unreported). Benedict now adds a factual allegation that McMahon's supervisor knew that McMahon had anger control issues before and after he was hired. But these factual averments do not support Benedict's contention that McMahon's employer failed to train, instruct, supervise, control, or discipline McMahon with respect to the proper use of force during the course of rendering emergency medical treatment. Nor has Benedict pled a sufficient causal nexus between rumors of McMahon's anger issues and the Malvern Fire Company's alleged

8

failure to train or supervise McMahon with respect to how, as a paramedic, he should properly restrain those to whom he was rendering emergency medical aid.

We will therefore dismiss with prejudice Benedict's Monell claim against the Malvern Fire Company in Count II.

      **C.**      **Borough of Malvern's Motion to Dismiss Count II**

The Borough moves to dismiss Count II of Benedict's second amended complaint because it did not employ McMahon. Borough MTD at 7. The Borough argues that the second amended complaint itself makes clear that McMahon held no position with the Borough and that no Borough employee or official supervised McMahon because he was, in fact, employed and supervised by the Malvern Fire Company. Id. at 7-8. The Borough argues that the only relationship between it and the Malvern Fire Company is that the Fire Company is located within the Borough and they share the common name "Malvern," but otherwise they are separate legal entities. Id. at 8. Benedict argues that her second amended complaint sufficiently pleads that the Borough employed McMahon. Pl.'s Resp. to Borough MTD at 12.

Benedict pleads in her second amended complaint that, "At all material times thereto, the Defendant, Mr. McMahon acted for himself and as the real and/or ostensible agent, servant, and/or employee of the Malvern Fire Company and the Borough of Malvern." Second Am. Compl. ¶ 10. In deciding this motion to dismiss, we must accept the second amended complaint's factual allegations as true, but we are not bound to accept as true legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555. Benedict's allegation that McMahon and the Borough had an agency, master/servant, or employer/employee relationship is a legal conclusion couched as a factual allegation, and so we need not accept it as true. The second amended complaint contains no factual averments to suggest that the Borough and the Malvern

9

Fire Company have any formal legal or financial relationship such that McMahon was an agent or employee of the Borough. Further, as we explained above, Benedict has failed to state a Monell claim against McMahon's undisputed employer, the Malvern Fire Company.

We will therefore dismiss with prejudice Count II of the second amended complaint as to the Borough.

### V.     Conclusion

We will dismiss Count II as to the Malvern Fire Company, McMahon's employer, because the second amended complaint fails to state a plausible Monell claim. We will also dismiss Count II as to the Borough because the second amended complaint does not include sufficient factual allegations, accepted as true, to demonstrate that the Borough employed or supervised McMahon. But we will deny McMahon's motion to dismiss Counts I and III of the second amended complaint. An appropriate Order follows.

BY THE COURT:

   /s/ Stewart Dalzell, J.
Stewart Dalzell, J.