**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| KATHLEEN BENEDICT | CIVIL ACTION |
|---|---|
| v. | NO. 15-6462 |
| BOROUGH OF MALVERN, et al. | |

Baylson, J.                                                                      May 1, 2017

### MEMORANDUM RE: MOTION TO STRIKE & MOTION TO DISMISS

Before the Court are two pending motions in this Section 1983 action: Defendant

Michael McMahon's Motion to Strike Plaintiff Kathleen Benedict's Third Amended Complaint

("TAC") (ECF No. 62), and Defendant Malvern Fire Company's ("Malvern Fire") Motion to

Dismiss, or in the alternative, to Strike Plaintiff's Third Amended Complaint (ECF No. 63).  For

the reasons explained below, the Motion to Strike is denied and the Motion to Dismiss is granted

with prejudice.

## I.      FACTUAL HISTORY

The following facts are taken from Plaintiff's TAC.  On December 10, 2013, Malvern

Fire Company dispatched an ambulance to 5 Birch Road in Malvern, Pennsylvania, in response

to a diabetic-type emergency.  TAC ¶ 10.  Three medical responders entered the home and

approached Plaintiff in the kitchen, where it was apparent she was suffering from hypoglycemia

and acting erratically.  Id. ¶¶ 11-12.  The emergency responders were familiar with Plaintiff

because they had treated her many times prior to the date of the subject incident.  Id. ¶ 13.  Their

goal in treating Plaintiff was to restore Plaintiff's normal blood sugar level by having her ingest

glucose-fortified food and drink.  Id. ¶ 14.  In order to accomplish that, they had to surround and

physically restrain her because she was attempting to leave the house.  Id. ¶¶ 15-16.  In the

process of doing so, one of the paramedics, Defendant McMahon, grabbed Plaintiff by the shirt

and hit her in the head with his left elbow, knocking her to the floor.  Id. ¶ 18.  Plaintiff was

rushed to Paoli Hospital, where she arrived in an unresponsive state and was diagnosed with a

subdural hematoma and brain bleed, likely caused by a blow to the head.  Id. ¶¶ 59-60.

McMahon later described Plaintiff as an "asshole" and stated that he had "knock[ed] her

for a loop."  Id. ¶ 27.  This behavior was not out of the ordinary for McMahon; both Malvern

Fire and McMahon's direct supervisor, Richard Constantine, were aware that McMahon had

anger control issues, was known by the nickname "McAngry," and generally was a "hothead"

with violent propensities.  Id. ¶¶ 31-32, 64-65.  But, despite that knowledge, neither Mr.

Constantine nor any other individual at Malvern Fire trained McMahon regarding the use of

excessive force while treating patients.  Id. ¶ 33.  In fact, McMahon was unaware of two relevant

company policies: the Scene Control Policy, which set forth how the paramedic team should

control a potentially violent patient, and the Self-Protection Policy, which directed paramedics to

refrain from entering the home of a potentially dangerous patient until law enforcement could

secure the scene.  Id. ¶¶ 34-39.  As a whole, McMahon never received any training at all from

Malvern Fire or from his supervisors, including training on how to respond to violent patient

situations and how to use force in restraining patients.  Id. ¶¶ 40-41, 45.  The aforementioned

lack of training directly led to McMahon's striking Plaintiff in the head on the date in question.

Id. ¶¶ 51-52.

Plaintiff alleges that the subject incident was not the first time that Malvern Fire's

medical personnel had been involved in dangerous interactions with her in her home.

Specifically, Plaintiff avers that such interactions took place "on numerous occasions in the six

(6) months leading up to the December 10, 2013 incident" and states that these "repeated

interactions with [Plaintiff] prior to December 10, 2013 involved identical and unsettling

behavior by and between [Plaintiff] and the Malvern Fire Company emergency personnel." <u>Id.</u> ¶¶ 82, 86.

## II. PROCEDURAL HISTORY

On December 4, 2015, Plaintiff filed suit against the Borough of Malvern, McMahon, and Malvern Fire, alleging in Count I excessive force in violation of Section 1983 against McMahon, in Count II policymaker and/or supervisory liability in violation of Section 1983 against the Borough of Malvern and Malvern Fire, and in Count III supplemental state law claims of unlawful seizure, negligence, gross negligence, assault, and battery against McMahon. (ECF No. 1). On January 7, 2016, Plaintiff filed an Amended Complaint alleging the same claims against the same defendants (ECF No. 9), to which all defendants responded with motions to dismiss. (ECF Nos. 10, 12, 15). Judge Dalzell granted the motion of each defendant without prejudice to Plaintiff refiling. (ECF No. 24). On April 21, 2016, Plaintiff filed her Second Amended Complaint ("SAC"), again bringing the same three counts contained in the two prior iterations of her complaint. (ECF No. 29). After considering the SAC as well as the parties' various responses and replies, Judge Dalzell denied McMahon's motion but granted those of the Borough of Malvern and Malvern Fire, and dismissed Count II with prejudice. (ECF No. 41).

On November 2, 2016, the case was re-assigned to the undersigned for all further proceedings. (ECF No. 52). On December 1, 2016, Plaintiff filed a Rule 60 motion in which she sought leave to file a third amended complaint based on newly discovered evidence. (ECF No. 55). This Court granted the motion on December 22, 2016 (ECF No. 59), and Plaintiff thereafter filed her TAC, which contains the following Counts:

**Count I**: Excessive force in violation of Section 1983 against McMahon;

**Count II**: Policymaker and/or supervisory liability in violation of Section 1983 against Malvern Fire;

**Count III**: Supplemental state law claims of unlawful seizure, negligence, gross

negligence, assault, and battery against McMahon.  (ECF No. 60).

Before the Court are McMahon's motion to strike the TAC (ECF No. 62), and the

Malvern Fire Company's motion to dismiss or, in the alternative, to strike the TAC (ECF No.

63).  Plaintiff responded to both motions on January 25, 2017 (ECF Nos. 64, 65) and Malvern

Fire replied on February 1, 2017 (ECF No. 66).

## III.    MOTIONS TO STRIKE

McMahon and Malvern Fire move to strike Plaintiff's TAC under Rule 12(f) because,

they aver, Plaintiff contravened this Court's Order by including in the TAC various factual

allegations that Plaintiff did not include in the proposed version of the TAC that she proffered to

the Court.  ECF No. 62 ("McMahon Mot.") at 8;[1] ECF No. 63 ("Malvern Fire Mot.") at 2-3.

McMahon argues, without the support of a single case citation, that Plaintiff's addition of the

new allegations is "in contravention of F.R.C.P. 15 [because] Plaintiff has filed a pleading for

which she did not have leave of this Court to do."  McMahon Mot. at 8.  Similarly, Malvern Fire

contends, also without any precedential support, that the TAC must be struck because it differs

from the proposed TAC attached to Plaintiff's motion for leave to amend.  Malvern Fire Mot. at

2-3.

These claims are without merit.  We granted leave for Plaintiff to file a third amended

complaint on December 22, 2016 based on Plaintiff's motion asserting that discovery had

uncovered new evidence supporting her claims against dismissed defendant Malvern Fire.  Our

ruling was not contingent on Plaintiff's filing of the exact version of the complaint that she

attached to her motion.  Compare Simmons v. Simpson House, Inc., No. 15-6636, 2017 WL

1196636, at *1 (E.D. Pa. Mar. 30, 2017) (striking portion of the plaintiff's amended complaint

---

[1] Because McMahon did not paginate his Motion, all references to it in this Memorandum are to the ECF page
numbers.

because the plaintiff had received leave to amend one count but had "added allegations to paragraphs pertaining to [other] counts").  Moreover, neither McMahon nor Malvern Fire has argued any prejudice as a result of Plaintiff's addition of these paragraphs, because there is none.  Even if we were to strike the new allegations from Plaintiff's TAC, there would be no practical effect on this case, as the information in those paragraphs is discoverable and, according to Plaintiff, was elicited from McMahon at his deposition.  Finally, we note the "preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits" rather than via technicalities.  Glover v. F.D.I.C., 698 F.3d 139, 145 (3d Cir. 2012) (quoting Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 550 (2010)).  For these reasons, both McMahon's and Malvern Fire's motions to strike are denied.

## IV.    MALVERN FIRE'S MOTION TO DISMISS

Malvern Fire also argues that dismissal is warranted under Rule 12(b)(6) because Plaintiff has failed to state a Monell claim against Malvern Fire for failure to train.  Before turning to the merits of this argument, we briefly summarize Judge Dalzell's reasoning in dismissing this claim twice prior.  In his opinion dated April 5, 2016, Judge Dalzell found that Plaintiff's claim against Malvern Fire, which was solely based on conclusory statements regarding Malvern Fire's knowledge of McMahon's violent propensities, "lack[e]d the requisite specificity or supporting factual averments to withstand a motion to dismiss [because] McMahon's nickname alone cannot support a Monell claim against his employer."  ECF No. 23 at 6-7.  Plaintiff thereafter amended her complaint to include an allegation that McMahon's supervisor knew McMahon to have anger control issues both before and after he was hired.  SAC ¶¶ 54-55.  On May 31, 2016, Judge Dalzell again dismissed the claim, reasoning that McMahon's nickname combined with the additional allegation regarding his supervisor's knowledge "[did] not support [Plaintiff's] contention that McMahon's employer failed to train,

instruct, supervise, control, or discipline McMahon with respect to the proper use of force during the course of rendering emergency medical treatment." ECF No. 40 at 8. Judge Dalzell further found that Plaintiff had failed to plead a sufficient causal nexus between McMahon's anger issues and Malvern Fire's failure to train him. Id. at 8-9. The claim was dismissed with prejudice.

The question now is whether, in Plaintiff's TAC, she has successfully pled a Monell claim. We note that fact discovery concluded in this case on October 5, 2016, and that the TAC represents Plaintiff's third crack at the proverbial apple. Nevertheless, her complaint continues to suffer from fatal infirmities. Although Plaintiff has added several paragraphs to her complaint concerning Malvern Fire's training programs and Malvern Fire's knowledge of McMahon's anger control issues, none suffice to demonstrate that Malvern Fire acted with the requisite "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).

### A. Parties' Arguments

Malvern Fire argues that Plaintiff's TAC must be dismissed because she has failed to allege any "similar tortious conduct" by McMahon or other Malvern Fire employees. Malvern Fire Mot. at 6 ("There is no pattern of past unconstitutional *conduct* pleaded which, if proven, would support a finding of deliberate indifference by Malvern Fire Company."). Malvern Fire further asserts that Plaintiff has not shown a causal link between any lack of training McMahon received and McMahon's alleged constitutional violation. Id. at 8-9. Finally, Malvern Fire contends that the TAC cannot survive on a single incident liability theory because the alleged constitutional violation was not a "highly predictable consequence" of Malvern Fire's failure to train. Id. at 6-8.

Plaintiff responds that she has adequately alleged that Malvern Fire had "a policy and custom whereby [it] permitted untrained paramedics, including McMahon, to enter the home of potentially violent patients without first educating them on how to utilize appropriate restraints and scene control measures." Pl.'s Opp'n to Malvern Fire at 11. She further argues that she has adequately alleged prior similar constitutional violations, citing the TAC's allegations of "numerous occasions" where Malvern Fire's medical personnel were involved in similar encounters with Plaintiff prior to the subject incident. Id. at 12-13.

### B. Analysis

Municipal employers, such as Malvern Fire, cannot be held vicariously liable for the constitutional violations committed by their employees. Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 691 (1978). Rather, a municipality will only be liable for its employees' violations of Section 1983 where an official policy or custom caused the alleged constitutional violation. Id. at 694. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). The Supreme Court has cautioned that a municipality's culpability under Monell "is at its most tenuous where a claim turns on a failure to train." Id. Indeed, for a local government's failure to train to qualify as an actionable "policy or custom," it "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (quoting Canton, 489 U.S. at 388). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 410 (1997).

To show the requisite "deliberate indifference" in a <u>Monell</u> failure to train claim, a plaintiff must ordinarily demonstrate a "pattern of similar constitutional violations by untrained employees." <u>Connick</u>, 563 U.S. at 62. Although such a showing is not necessary to the maintenance of a failure to train claim, the Supreme Court has made clear that a plaintiff who cannot show prior instances of misconduct could only carry a failure to train claim "in [the] narrow range of circumstances [where] a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." <u>Bryan Cnty.</u>, 520 U.S. at 409 (describing the Court's holding in <u>Canton</u>). Deliberate indifference may also be established by evidence that policymakers were aware of the constitutional deprivations and of alternatives for preventing them, "'but either deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard.'" <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 972 (3d Cir. 1996) (quoting <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1064 (3d Cir. 1991)).

Plaintiff's claim under Count II against Malvern Fire can be distilled to the following: Malvern Fire had a general policy of permitting paramedics to enter the homes of potentially violent patients without having received training on "how to utilize appropriate restraints and scene control measures" and, as regarding McMahon, Malvern Fire knew he had anger issues and knew that rescues in Plaintiff's home were likely to involve potentially volatile interactions, yet failed to train McMahon regarding "scene safety, use of force, or the proper use of restraints." Pl.'s Opp'n to Malvern Fire at 11-19. In support of her <u>Monell</u> claim, Plaintiff points to the alleged lack of training received by McMahon and other members of Malvern Fire's emergency medical team regarding the appropriate use of force in handling potentially violent patients. <u>Id.</u> at 12-13 (citing TAC ¶¶ 46-47, 91, 97). She further states that such failure to train

resulted in a policy of acquiescence which led to the use of excessive force by McMahon.  Id. at 12 (citing TAC ¶ 91).

Where Plaintiff's claim fails is that, even assuming she successfully pled the existence of a policy or custom, she has not demonstrated that such policy or custom was maintained with "deliberate indifference as to its known or obvious consequences."  Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bryan Cnty., 520 U.S. at 407) (internal quotations omitted).  As discussed above, to show "deliberate indifference" in the context of a failure to adequately train municipal employees, a plaintiff must ordinarily show a pattern of violations.  Here, Plaintiff alleges "repeated interactions" between herself and Malvern Fire's emergency personnel "involv[ing] identical and unsettling behavior by and between" herself and the personnel.  TAC ¶ 86.  She also avers that "on numerous occasions in the six (6) months leading up to the December 10, 2013 incident, [Malvern Fire's] medical personnel were involved in dangerous and potentially injurious interactions with [Plaintiff] in her home."  Id. ¶ 82.

Neither of these allegations is specific enough to show that Malvern Fire was "aware of similar unlawful conduct in the past, but failed to take precautions against future violations."  Beck, 89 F.3d at 972 (quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990).  The Third Circuit has affirmed dismissals of Monell claims such as this one, where a plaintiff supports her case via "conclusory and general" averments that "fail[] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability."  Wood v. Williams, 568 F. App'x 100, 102-04 (3d Cir. 2014) (quoting McTernan v. City of York, PA, 564 F.3d 636, 658-659 (3d Cir. 2009)).  In Wood, the plaintiff's failure to show "prior notice through a pattern of similar constitutional violations" was fatal to her claim that a municipal employer was deliberately indifferent to the risk of retaliation for First Amendment protected speech by employees.  Id. at 105.  Similarly, here Plaintiff has not demonstrated that Malvern Fire knew or

had any reason to know of instances in which one of its medical technicians used excessive force in attempting to treat a patient.

Several other cases bear out the necessity of pleading, with specificity, prior similar instances of misconduct. For instance, in <u>Kelty v. City of Philadelphia</u>, No. 16-306, 2016 WL 8716437 (E.D. Pa. June 10, 2016), the court dismissed a complaint for excessive force where the plaintiff averred that the city had been "sweeping under the rug . . . misconduct towards inmates, which ha[d] been going on for years." <u>Kelty v. City of Philadelphia</u>, No. 16-306, ECF No. 4 ¶ 17. Such a conclusory allegation "that neglect[ed] to allege specific instances of prior misconduct by correctional officers" was insufficient to show the deliberate indifference necessary to support a <u>Monell</u> failure to train claim. <u>Kelty</u>, 2016 WL 8716437, at *5. Similarly, in <u>Buonadonna v. Se. Delco Sch. Dist.</u>, No. 14-2708, 2015 WL 2365629 (E.D. Pa. May 18, 2015), the court considered a plaintiff's failure to train claim in which the plaintiff pled that the defendant school district was "aware that prior 'numerous student assaults [had] occurred on their school buses.'" <u>Id.</u> at *12. The court found that "merely alleging the existence of prior incidents, without more detail about those incidents, is not enough to survive a Rule 12(b)(6) motion" and dismissed the claim. <u>Id.</u> Finally, we point to <u>Niblack v. Murray</u>, No. 12-6910, 2013 WL 4432081 (D.N.J. Aug. 14, 2013), in which the court dismissed a plaintiff's failure to train claim under <u>Monell</u> because the plaintiff's allegation of "a history of widespread abuse imputed to supervisory and personnel prior misbehavior" without more was insufficient to establish a pattern of constitutional violations. <u>Id.</u> at *8-9.

Just as in <u>Kelty</u>, <u>Buonadonna,</u> and <u>Niblack</u>, Plaintiff has not sufficiently pled that Malvern Fire acted with deliberate indifference to the possibility that its failure to train its medical personnel would result in constitutional violations. Plaintiff's vague references to "numerous occasions" on which Malvern Fire's employees "were involved in dangerous and

potentially injurious interactions with [Plaintiff] in her home" and "repeated interactions" with Plaintiff prior to the subject incident, are insufficient to satisfy the pleading standard of Rule 8. TAC ¶¶ 82, 86. Rather, in order for her claim against Malvern Fire to survive, Plaintiff needed to plead specific facts showing a "pattern of similar constitutional violations," meaning details of the alleged prior incidents such as the dates on which they occurred, the persons involved, and any other relevant information. Connick, 563 U.S. at 62.[2]

## V.    CONCLUSION

For the foregoing reasons, McMahon's and Malvern Fire's motions to strike are denied. In addition, because Plaintiff has had three opportunities to proffer sufficient facts to make out a claim against Malvern Fire for failure to train McMahon, yet has failed to do so, Malvern Fire's motion to dismiss is granted with prejudice.

O:\CIVIL 15\15-6462 Benedict v McCann\15cv6462 Memo re MTD.docx

---

[2] We note that Canton left open the possibility that a plaintiff pursuing a failure to train claim could do so without showing a pattern of similar constitutional violations in the narrow set of circumstances where the violation alleged was the "obvious consequence" of the municipality's failure to train. Connick, 563 U.S. at 63. This is referred to as the single incident theory of liability. Id. Plaintiff has not alleged that her case fits within this exception to the pattern requirement, and it is highly unlikely that she could do so. Just as in Connick, where the Court held that due to the myriad of ways that attorneys receive legal training, "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law," here, too, the alleged failure of Malvern Fire to provide training on treating potentially violent patients does not lead to the "obvious consequence" of a constitutional violation such as what occurred in this case. Id. at 66. Indeed, just as prosecutors receive legal training outside the confines of the District Attorney's office, licensed paramedics like McMahon are subject to licensure requirements by the state of Pennsylvania that include various trainings, tests and continuing education requirements. See 35 Pa.C.S. § 8117; Malvern Fire Mot. at 6-8; TAC ¶ 24. Due to these similarities between attorneys and paramedics under the Supreme Court's reasoning in Connick, we are skeptical that Plaintiff could make out a claim based on the single-incident liability theory.